Justice Thomas,
dissenting.
The Court has long recognized that “[i]t is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.” Miranda v. Arizona, 384 U. S. 436, 477-478 (1966). Consistent with this principle, the Court held in Coolidge v. New Hampshire, 403 U. S. 443 (1971), that no Fourth Amendment search occurs where, as here, the spouse of an accused voluntarily leads the police to potential evidence of wrongdoing by the accused. Id., at 486-490. Because Coolidge squarely controls this case, the Court need not address whether police could permissibly have conducted a general search of the Randolph home, based on Mrs. Randolph’s consent. I respectfully dissent.
In the instant case, Mrs. Randolph told police responding to a domestic dispute that respondent was using a substan *146 tial quantity of cocaine. Upon police request, she consented to a general search of her residence to investigate her statements. However, as the Court’s recitation of the facts demonstrates, ante, at 107, the record is clear that no such general search occurred. Instead, Sergeant Brett Murray asked Mrs. Randolph where the cocaine was located, and she showed him to an upstairs bedroom, where he saw the “piece of cut straw” on a dresser. Corrected Tr. of Motion to Suppression Hearing in Case No. 2001R-699 (Super. Ct. Sumter Cty., Ga., Oct. 3, 2002), pp. 8-9. Upon closer examination, Sergeant Murray observed white residue on the straw, and concluded the straw had been used for ingesting cocaine. Id., at 8. He then collected the straw and the residue as evidence. Id., at 9.
Sergeant Murray’s entry into the Randolphs’ home at the invitation of Mrs. Randolph to be shown evidence of respondent’s cocaine use does not constitute a Fourth Amendment search. Under this Court’s precedents, only the action of an agent of the government can constitute a search within the meaning of the Fourth Amendment, because that Amendment “was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies.” Burdeau v. McDowell, 256 U. S. 465, 475 (1921) (emphasis added). See also Coolidge, 403 U. S., at 487. Applying this principle in Coolidge, the Court held that when a citizen leads police officers into a home shared with her spouse to show them evidence relevant to their investigation into a crime, that citizen is not acting as an agent of the police, and thus no Fourth Amendment search has occurred. Id., at 488-498.
Review of the facts in Coolidge clearly demonstrates that it governs this case. While the police interrogated Coolidge as part of their investigation into a murder, two other officers were sent to his house to speak with his wife. Id., at 485. During the course of questioning Mrs. Coolidge, the *147 police asked whether her husband owned any guns. Id., at 486. Mrs. Coolidge replied in the affirmative, and offered to retrieve the weapons for the police, apparently operating under the assumption that doing so would help to exonerate her husband. Ibid. The police accompanied Mrs. Coolidge to the bedroom to collect the guns, as well as clothing that Mrs. Coolidge told them her husband had been wearing the night of the murder. Ibid.
Before this Court, Coolidge argued that the evidence of the guns and clothing should be suppressed as the product of an unlawful search because Mrs. Coolidge was acting as an “‘instrument,’” or agent, of the police by complying with a “ ‘demand’ ” made by them. Id., at 487. The Court recognized that, had Mrs. Coolidge sought out the guns to give to police wholly on her own initiative, “there can be no doubt under existing law that the articles would later have been admissible in evidence.” Ibid. That she did so in cooperation with police pursuant to their request did not transform her into their agent; after all, “it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals.” Id., at 488. Because the police were “acting normally and properly” when they asked about any guns, and questioning Mrs. Coolidge about the clothing was “logical and in no way coercive,” the Fourth Amendment did not require police to “avert their eyes” when Mrs. Coolidge produced the guns and clothes for inspection.[1] Id., at 488-489.
*148 This case is indistinguishable from Coolidge, compelling the conclusion that Mrs. Randolph was not acting as an agent of the police when she admitted Sergeant Murray into her home and led him to the incriminating evidence.[2] Just as Mrs. Coolidge could, of her own accord, have offered her husband’s weapons and clothing to the police without implicating the Fourth Amendment, so too could Mrs. Randolph have simply retrieved the straw from the house and given it to Sergeant Murray. Indeed, the majority appears to concede as much. Ante, at 116 (“The co-tenant acting on his own initiative may be able to deliver evidence to the police, Coolidge, supra, at 487-489 ..., and can tell the police what he knows, for use before a magistrate in getting a warrant”). Drawing a constitutionally significant distinction between what occurred here and Mrs. Randolph’s independent production of the relevant evidence is both inconsistent with Coolidge and unduly formalistic.[3]
Accordingly, the trial court appropriately denied respondent’s motion to suppress the evidence Mrs. Randolph pro *149 vided to the police and the evidence obtained as a result of the consequent search warrant. I would therefore reverse the judgment of the Supreme Court of Georgia.

 Although the Court has described Coolidge as a ‘“third party consent’ ” case, United States v. Matlock, 415 U. S. 164, 171 (1974), the Court’s opinion, by its own terms, does not rest on its conception of Mrs. Coolidge’s authority to consent to a search of her house or the possible relevance of Mr. Coolidge’s absence from the scene. Coolidge, 403 U. S., at 487 (“[W]e need not consider the petitioner’s further argument that Mrs. Coolidge could not or did not ‘waive’ her husband’s constitutional protection against unreasonable searches and seizures”). See also Walter v. United States, *148 447 U. S. 649, 660-661, n. 2 (1980) (White, J., concurring in part and concurring in judgment) (“Similarly, in Coolidge v. New Hampshire, the Court held that a wife's voluntary action in turning over to police her husband’s guns and clothing did not constitute a search and seizure by the government”).

 The Courts of Appeals have disagreed over the appropriate inquiry to be performed in determining whether involvement of the police transforms a private individual into an agent or instrument of the police. See United States v. Pervaz, 118 F. 3d 1, 5-6 (CA1 1997) (summarizing approaches of various Circuits). The similarity between this case and Coolidge avoids any need to resolve this broader dispute in the present case.

 That Sergeant Murray, unlike the officers in Coolidge, may have intended to perform a general search of the house is inconsequential, as he ultimately did not do so; he viewed only those items shown to him by Mrs. Randolph. Nor is it relevant that, while Mrs. Coolidge intended to aid the police in apprehending a criminal because she believed doing so would exonerate her husband, Mrs. Randolph believed aiding the police would implicate her husband.